Kimberly Sherman, OSB 174646
Emily Artzberger, OSB 253656
Education, Environmental, & Estate Law
P.O. Box 728
Eugene, Oregon, 97440
(360) 503-0334
kim.sherman@e3-law.com
emily@e3-law.com

      Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **MARIA BERTHA GUZMAN,** individually and as guardian for her minor son, **U.C.G.,** <br><br>                 Plaintiff, <br><br>   v. <br><br> **MEDFORD SCHOOL DISTRICT 549C**, an Oregon public school district; **FELICIA HOLT,** individually and in her official capacity; and **PHYLLIS MACKAY,** individually and in her official capacity, <br><br>              Defendants. | **Case Number: 1:25-CV-1653** <br><br> **COMPLAINT** <br><br> (Fourth and Fourteenth Amendment; 42 U.S.C. § 1983; 29 U.S.C. § 794; 42 U.S.C. § 12132; 42 U.S.C. § 2000d; excessive force and deliberate indifference; and pendent state claims (negligence, battery; assault, abuse of a vulnerable person, negligent infliction of emotional abuse; and intentional inflection of emotional distress) <br><br>   DEMAND FOR JURY TRIAL |

**Table of Contents**

I.    **NATURE OF THE ACTION** ............................................................ **6**

II.   **JURISDICTION AND VENUE** ...................................................... **7**

III.  **PARTIES** ........................................................................................ **7**

IV.  **BACKGROUND FACTS** ................................................................ **9**

V.   **FACTUAL BACKGROUND** .......................................................... **9**

VI.  **DAMAGES** .................................................................................... **15**

VII. **CLAIMS FOR RELIEF** .................................................................. **16**

   CLAIM 1:   FOURTH AMENDMENT – EXCESSIVE FORCE (42 U.S.C. § 1983)  AGAINST DEFENDANT MACKAY ............................................................... 16

   CLAIM 2:   FOURTH AND FOURTEENTH AMENDMENTS (42 U.S.C. § 1983) MONELL LIABILITY AGAINST DEFENDANT MSD ................................. 17

   CLAIM 3:   FOURTEENTH AMENDMENT AND VIOLATION OF CONSTITUTIONAL RIGHT TO EQUAL PROTECTION ON THE BASIS OF RACE (42 U.S.C. §§ 1981 AND 1983) AGAINST DEFENDANT MSD ................................. 19

   CLAIM 4:   FOURTEENTH AMENDMENT AND VIOLATION OF CONSTITUTIONAL RIGHT TO EQUAL PROTECTION ON THE BASIS OF RACE (42 U.S.C. §§ 1981 AND 1983) AGAINST DEFENDANTS HOLT AND MACKAY ...................................... 21

   CLAIM 5:   FOURTEENTH AMENDMENT – VIOLATION OF CONSTITUTIONAL RIGHT TO EQUAL PROTECTION ON THE BASIS OF DISABILITY (42 U.S.C. § 1983) AGAINST DEFENDANT MSD ............................................................... 23

   CLAIM 6:   FOURTEENTH AMENDMENT – VIOLATION OF CONSTITUTIONAL RIGHT TO EQUAL PROTECTION ON THE BASIS OF DISABILITY (42 U.S.C. § 1983) AGAINST DEFENDANTS HOLT AND MACKAY ................................... 23

   CLAIM 7:   FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983) AGAINST DEFENDANT MACKAY ........................................ 24

   CLAIM 8:   FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983) AGAINST DEFENDANT HOLT ............................................... 25

CLAIM 9:    FOURTEENTH AMENDMENT – PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)
AGAINST DEFENDANT MSD AND HOLT................................................................. 26

CLAIM 10:   VIOLATION OF CONSTITUTIONAL RIGHT TO SUBSTANTIVE DUE PROCESS
42 U.S.C. § 1983 –DELIBERATE INDIFFERENCE INDIVIDUALLY  AGAINST
DEFENDANTS MSD, FELICA HOLT, AND PHYLLIS MACKAY .............................. 27

            COUNT 10.1   Deliberate Indifference to Health and Safety
                         Against Defendant MSD......................................... 27

            COUNT 10.2   Deliberate Indifference to Health and Safety
                         Against Defendants Holt and Mackay .................... 29

CLAIM 11:   SECTION 504 OF THE REHABILITATION ACT (29 U.S.C. § 794)
AGAINST DEFENDANT MSD ................................................................................ 30

CLAIM 12:   TITLE II OF THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12132)
AGAINST DEFENDANT MSD ................................................................................ 34

CLAIM 13:   TITLE VI OF THE CIVIL RIGHTS ACT (42 U.S.C. § 2000D)
NATIONAL ORIGIN/LANGUAGE DISCRIMINATION
AGAINST DEFENDANT MSD ................................................................................ 35

CLAIM 14:   NEGLIGENCE – OREGON TORT CLAIMS ACT – DUTY OF SUPERVISION/TRAINING
AGAINST DEFENDANT MSD. .............................................................................. 37

CLAIM 15:   ASSAULT – OREGON TORT CLAIMS ACT
AGAINST DEFENDANTS MSD AND MACKAY ...................................................... 39

CLAIM 16:   BATTERY – OREGON TORT CLAIMS ACT
AGAINST DEFENDANTS MSD AND MACKAY ...................................................... 40

CLAIM 17:   ABUSE OF A VULNERABLE PERSON
AGAINST DEFENDANTS MSD AND MACKAY ...................................................... 42

CLAIM 18:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
OREGON TORT CLAIMS ACT
AGAINST DEFENDANT MACKAY ......................................................................... 43

CLAIM 19:   IN THE ALTERNATIVE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
AGAINST ALL DEFENDANTS ............................................................................... 45

CLAIM 20:   VIOLATION OF OREGON EDUCATIONAL STATUTES
(ORS 343.155, ORS 343.221)........................................................................ 46

**VIII.VII. PRAYER FOR RELIEF............................................................................... 47**

# Table of Authorities

## CASES

*Delaney v. Clifton,* 180 Ore. App. 119 (Or. App. 2002)................................................ 43

*Foster v. Miramontes*, 236 Or. App. 381 (2010) ......................................................... 42

*R. M. by and through S.M. v. Gilbert Unified Sch. Dist*., 768 Fed. Appx. 720 (9th Cir. 2019) ... 15

*Rachel H. v. Dept. of Educ. Hawaii,* 868 F.3d 1085 (9th Cir. 2017)............................................ 14

## STATUTES

ORS  30.275.................................................................................................................. 8

ORS 124.100............................................................................................................. 7, 42

ORS 332.072.................................................................................................................. 8

ORS 339.294................................................................................................................ 45

ORS 339.356.................................................................................................................. 8

ORS 343.155................................................................................................................ 46

ORS 343.221................................................................................................................ 46

## CODE

29 U.S.C. § 794............................................................................................................ 31

42 U.S.C. § 12132........................................................................................................ 34

42 U.S.C. § 1981................................................................................................... 19, 21, 22

42 U.S.C. § 1983.................................................................................................... passim

42 U.S.C. § 1988.................................................................................................... passim

## MEDFORD SCHOOL DISTRICT BOARD POLICY

MSD Board Policy JFCF ............................................................................................................. 8

MSD Board Policy JGAB ........................................................................................................... 41

## I.    NATURE OF THE ACTION

1.      This is an action under federal civil rights law and Oregon state tort law arising from Defendants' use of excessive force, deliberate indifference to the health and safety of a child with disabilities, and discriminatory educational practices. Plaintiff seeks relief for violations of the Fourteenth Amendment (42 U.S.C. § 1983), Section 504 of the Rehabilitation Act (29 U.S.C. § 794), Title II of the Americans with Disabilities Act (29 U.S.C. § 12132), and pendent state claims for negligence, assault, battery, abuse of a vulnerable person, and intentional infliction of emotional distress.

2.      This lawsuit arises from a series of events during the 2023–24 and 2024–25 school years involving U.C.G., a minor child with autism and related disabilities.

3.      U.C.G., a current 7 year old MSD student enrolled in the Medford School District XJ ("MSD"), brings this action against MSD, Administrator Felcia Holt, and Educational Assistant Phylis Mackay, alleging that the defendants are liable for a civil rights violation (deliberate indifference); negligence; assault and/or battery; abuse of a vulnerable person, and intentional infliction of emotional distress, for the physical and emotional injuries U.C.G. has suffered at MSD.

4.      This action arises from the assault, restraint, and discriminatory treatment of U.C.G., a seven-year-old child with autism, by Defendants Medford School District 549C ("MSD"), educational assistant Phyllis Mackay, and administrator Felicia Holt.

5.      Plaintiff alleges that Defendants' actions violated the Fourth and Fourteenth Amendments to the United States Constitution, federal disability and civil rights statutes, and Oregon statutory and common law.

6 - COMPLAINT

6.      Plaintiff Maria Bertha Guzman also brings individual claims for the denial of her rights

to participate in her son's education, discrimination on the basis of national origin and language,

and emotional distress caused by Defendants' conduct.

## II.    JURISDICTION AND VENUE

7.      This action arises under the Constitution and laws of the United States; this Court has

jurisdiction pursuant to 28 U.S.C. § 1331 and 1343(a).

8.      The Court has supplemental jurisdiction over the Oregon state law claims related to the

same issues and controversies that gave rise to federal law claims, pursuant to 28 U.S.C. § 1367.

9.      The acts or omissions giving rise to this complaint took place in the City of Medford,

Jackson County, Oregon; Defendant MSD's principal place of business is and was Jackson

County, Oregon; Defendant Mackay was contracted by MSD to provide educational assistance at

the MSD school that U.C.G. attended; and Defendant Holt was employed by MSD as an

administrator. Thus, venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b).

## III.   PARTIES

10.     Plaintiff U.C.G. is a minor child, under the age of 14, with autism and related disabilities.

He brings suit through his mother and guardian, Plaintiff Maria Bertha Guzman, who resides in

Medford, Oregon.

11.     At all material times, Maria Bertha Guzman ("Ms. Guzman") was and is a resident and

domiciliary of Jackson County, Oregon, and is the mother and guardian of the minor Plaintiff

("U.C.G."). Ms. Guzman speaks Spanish with limited English. At all times of the events at

District, Ms. Guzman was parent and guardian of, U.C.G., along with U.C.G.'s father,  José

Andres Cortes. Together, both Mr. Cortes and Ms. Guzman provided a home and emotional, behavioral, educational, and advocacy support for U.C.G..

12.     Plaintiff Maria Bertha Guzman also asserts claims in her individual capacity, based on Defendants' conduct directed toward her and the denial of her rights as a parent.

13.     Defendant Medford School District 549C ("MSD") is a public school district organized under Oregon law and a recipient of federal financial assistance.

14.     Defendant Phyllis Mackay was, at all times relevant, employed by MSD as an educational assistant.

15.     Defendant Felicia Holt was, at all times relevant, employed by MSD as an administrator.

16.     At all material times, Defendant MSD was and is an Oregon public school district operating under the authority of ORS Chapter 332, providing public school education from kindergarten through the twelfth grade pursuant to ORS 332.072, and is responsible for and operates numerous schools and programs in Medford, Oregon. Defendant MSD maintains central offices at 680 N. Biddle Rd., Medford, Oregon 97504. U.C.G. is and was a student enrolled in MSD schools.

17.     The District warrants and accepts the burden and responsibility of keeping students, including U.C.G., safe. MSD, like all Oregon school districts, have an adopted board policy prohibiting harassment, intimidation, or bullying. ORS 339.356. MSD Board Policy JFCF "strictly prohibit[s]" "[h]azing, harassment, intimidation or bullying, menacing, and acts of cyberbullying by students, staff, or third parties toward students."

18.     Pursuant to ORS 30.275 timely notice of intent to file a tort claim was served to MSD on April 2, 2024.

8 - COMPLAINT

## IV.   BACKGROUND FACTS

19.     The injuries described below are concrete and particularized actual injuries-in-fact. The injuries-in-fact were caused by the defendants' actions or refusals to act in a manner required by federal law. The relief requested is within the court's power to provide.

20.     At the time of the injuries, Plaintiff U.C.G. was a five year-old student who is disabled with  autism, emotional disturbances, behavioral disorders, and difficulty communicating with others regarding his emotions. U.C.G. is also an English as a Second Language ("ESL") learner, as Spanish is his first language. During the time period giving rise to the events in question, U.C.G. was considered a non-verbal or limitedly verbal child.

## V.   FACTUAL BACKGROUND

21.     On November 3, 2023, Defendant Mackay forcibly restrained U.C.G. by pinning his wrists to a chair and pressing her body weight against him.

22.     U.C.G. was a five-year-old autistic child, limitedly verbal, and weighing approximately forty pounds.

23.     The restraint left visible bruises and marks on U.C.G.

24.     A report was made to the Oregon Department of Human Services ("DHS"), which issued a founded abuse finding against Mackay.

25.     MSD failed to notify Ms. Guzman that Mackay had been reported for abuse and that DHS had substantiated the report.

26.     On September 13, 2024, during an Individualized Education Program ("IEP") meeting, Defendant Ms. Holt engaged in a tirade of vitriol lasting nearly 20 minutes, repeatedly mocked Ms. Guzman, rolled her eyes, cut Ms. Guzman off, and referred to U.C.G. as "a criminal."

27.     MSD provided a Spanish-language interpreter for IEP meetings, but the interpreter failed to accurately interpret communications.

28.     A Spanish-speaking family advocate with thirty years of experience stated that she had "never seen such an inappropriate language skill in an interpreter."

29.     MSD ignored complaints about the interpreter's lack of competence and continued to deny Ms. Guzman meaningful language access.

30.     MSD failed to adequately train Mackay in safe restraint techniques and permitted her to work one-on-one with disabled students despite her lack of training.

31.     MSD failed to supervise Mackay.

32.     MSD failed to inform Ms. Guzman of Mackay's assault. An MSD staff member reported he assault to the Oregon Department of Health & Human Services, which opened an investigation into the abuse allegation. On March 1, 2024, nearly 4 months after the abuse, Ms. Guzman received notice from ODHA that the Department had determined that the abuse allegation was *founded*. To the best of her recollection, the ODHS notice is the first time Ms. Guzman had been told of staff abuse against U.C.G..

33.     U.C.G.'s behavioral challenges worsened significantly between November 2023 and January 2024. U.C.G. was suspended multiple times, and parents were frequently called to pick U.C.G. up early from school. U.C.G.'s behaviors at home were not challenging

34.    Parents requested a transfer for U.C.G. to attend a different school after Winter break; MSD agreed and transferred U.C.G. to Kennedy Elementary School, where he presently attends. After transferring schools, U.C.G.'s school behaviors improved dramatically.

35.    MSD tolerated discriminatory conduct toward disabled students and their families, including Holt's derogatory comments and mocking treatment of Ms. Guzman.

36.    As a result of Defendants' conduct, U.C.G. suffered physical injury, emotional trauma, and educational regression, and Ms. Guzman suffered humiliation, exclusion from her son's education, and severe emotional distress.

### A. Description of U.C.G.

37.    U.C.G., at the start of the events which give rise to this complaint, was 5 years old and a kindergarten student. U.C.G. attended Wilson Elementary School.

38.    U.C.G.'s primary diagnosis is Autism Spectrum Disorder ("ASD").

39.    U.C.G. was considered a limited or non-verbal student at the time. U.C.G. would communicate with single word demands, few word phrases, sounds, facial expressions, and other assistive devices and accommodations.

40.    Because of U.C.G.'s communication challenges, as aggravated by both his disability and his status as an ESL learner, U.C.G. had occasional aggressive episodes while at school. This behavior is fairly characteristic amongst individuals with U.C.G.'s disability, notwithstanding the language barrier element as well.

41.    During these episodes, U.C.G. did not frequently touch other staff members or students. It was noted on one occasion that U.C.G. caused scratch marks to another student.

**B. Improper Restraint by Mackay, Founded by ODHS**

42.     On November 3, 2023, an unknown staff member of U.C.G.'s elementary school, was passing by U.C.G.'s classroom. The classroom door was open and the passer by staff member glanced inside the classroom.

43.     The unknown staff member witnessed Phylis Mackay, using her hands, arms, and adult body weight, physically holding U.C.G. down to the chair, restricting his small body from movement in its entirety. The unknown staff member was evidently concerned at this sight, as she reported this incident to the Oregon Department of Human Services ("ODHS") on the day in which she witnessed the incident.

44.     U.C.G.'s parents were not notified and were unaware that this incident occurred on November 3 and the days following. U.C.G.'s parents, however, did make note that U.C.G. had returned home with unidentified bruising and marks throughout that school year.

45.     Approximately one week following the November 3 assault, a female unknown to Ms. Guzman called Ms. Guzman. The woman did not speak Spanish well. Ms. Guzman believed her questions about possible bruising on U.C.G. were an effort to accuse the parents of possibly hurting U.C.G. at home. Ms. Guzman did not understand that phone call to be related to events at the school.

46.     On March 1, 2024, nearly months after the incident, U.C.G.'s parents received a notice in the mail from the ODHS. The notice was informing parents that ODHS's Office of Training, Investigations, and Safety ("OTIS") had been investigating an allegation of abuse or neglect involving their child, and that the investigation was complete. The notice elaborates on the findings, but in short states, "The allegation of wrongful restraint is Founded."

47.     Once U.C.G.'s parents obtained legal counsel, and obtained the full OTIS report, Ms. Guzman learned that Mackay had no training in restraints or safe holds of any kind, at any point in time, as required by law.

### C. Discrimination

48.     On September 13, 2024 U.C.G.'s parents, along with their family support specialist ("Ms. Martínez Razo") met with district staff at the elementary school to attend U.C.G.'s routine annual IEP meeting.

49.     Ms. Martínez Razo has the capabilities to function as an English and Spanish translator and she did so at the IEP meeting on September 13, 2024. Ms. Martínez Razo diligently took notes at this meeting. A second support person attended on behalf of the family; this person also took detailed notes.

50.     At this meeting, while discussing U.C.G.'s behaviors (which are a product of his disability), Holt called U.C.G. a "criminal," rolled her eyes when Ms. Guzman spoke, rarely let Ms. Guzman finish a sentence, and generally engaged in shaming U.C.G.'s parents for their son's behaviors, despite the fact that these behaviors were a direct result of U.C.G.'s disability and language barrier.

51.     On belief and information, U.C.G.'s behavioral challenges were escalating as a direct result of the abusive treatment he was receiving in the classroom.

52.     Ms. Martínez Razo, for over 20 years, has been an educational advocate for similarly situated families, and was formerly a state certified English Spanish translator.  Ms. Martínez Razo has supported hundreds of families, and has attended *thousands* of IEP and IFSP meetings across a multitude of Oregon School Districts.

53.    Ms. Martínez Razo will be able to testify that Defendants MSD, Holt, and Mackay were "absolutely relentless" toward U.C.G. and his family, and has treated them with "such disdain."

54.    Ms. Martínez Razo will be able to testify that Defendant Felicia Holt was consistently demeaning and "condescending" towards the family, including dismissing Ms. Guzman's statements about her own son and telling Ms. Guzman that her statements and opinions must be "untrue."

55.    Ms. Martínez Razo is fluent in Spanish and English. Ms. Martínez Razo has been certified as a translator by the State of Oregon and is very familiar with the ethics rules for translations. These rules include a requirement to "translate word for word what was spoken, in as close as possible to the tone of the speaker" and to translate the words as closely as possible. Ms. Martínez Razo personally observed MSD's translator in action on several occasions in meetings with Ms. Guzman. The translator routinely behaved in an ethically challenged manner on many occasions, including: (1) bringing a pre-printed summary of a meeting that had not yet happened to the meeting and reading from the summary; (2) summarizing a person's speech rather than translating it exactly; (3) and using the word for "location" rather than "placement" in an IEP meeting. Ms. Martínez Razo engaged in a lengthy discussion with the MSD Translator on this issue (among others), as the distinction between those two words in the context of an IEP meeting is critical. [1]

_____

[1] The Ninth Circuit has distinguished between a student's **"educational placement"** and the **"location"** of services under the IDEA. *Placement* refers to the educational program and environment in which a child receives special education — that is, the Least Restrictive Environment (LRE) and the mix of services, supports, and specially designed instruction set forth in the IEP. *See Rachel H. v. Dept. of Educ. Hawaii,* 868 F.3d 1085 (9th Cir. 2017) (clarifying that "placement" concerns the educational program, not the physical site). By

## VI.  DAMAGES

56.     The acts and omissions of Defendants Mackay and Holt were undertaken with reckless and callous disregard for the federally protected rights of Plaintiff U.C.G. and his mother, and were motivated by deliberate indifference to their safety and dignity. Accordingly, punitive damages should be awarded against Defendants Mackay and Holt in an amount to be determined at trial, sufficient to punish and deter such conduct.

57.     Plaintiff U.C.G. is entitled to recover economic damages incurred as a result of Defendants' actions in an amount to be determined at trial.

58.     As a proximate result of the acts and omissions alleged in this Complaint, Plaintiff U.C.G. is entitled to noneconomic damages for injuries to his person, physical pain, mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness, anxiety, loss of educational opportunities, regression in learned behavioral management skills, and regression in his behavioral support school program, all in an amount to be determined at trial.

---

contrast, *location* refers to the actual setting in which those services are delivered, such as a particular classroom or school building. *Id*. The Ninth Circuit has further explained that a change in location — for example, moving a student from one school campus to another — does not constitute a change in educational placement unless the student's underlying program is significantly altered. *Unknown Party v. Gilbert Unified Sch. Dist.*, No. CV-16-02614-PHX-JJT, 2017 WL 3225189 (D. Ariz. July 31, 2017), aff'd sub nom. R. M. by and through S.M. v. Gilbert Unified Sch. Dist., 768 Fed. Appx. 720, *5–7 (9th Cir. 2019)(unpublished).

Accordingly, in this Circuit, "placement" is the programmatic environment dictated by the IEP (LRE, service structure, and instructional design), while "location" is the physical classroom or campus where that placement is implemented.

59.     Plaintiff Maria Bertha Guzman is entitled to recover economic damages incurred as a result of Defendants' actions in an amount to be determined at trial.

60.     As a proximate result of the acts and omissions alleged in this Complaint, Plaintiff Guzman is also entitled to noneconomic damages for mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness, and anxiety, in an amount to be determined at trial.

61.     Plaintiffs also seek reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, which provides: "In any action or proceeding to enforce a provision of sections * * * 1983, * * *, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

## VII.    CLAIMS FOR RELIEF

### CLAIM 1:    Fourth Amendment – Excessive Force (42 U.S.C. § 1983) Against Defendant Mackay

62.     Plaintiffs incorporate by reference the above paragraphs.

### A.  Plaintiff U.C.G. (by Guardian)

63.      Mackay, acting under color of state law, unreasonably seized and restrained U.C.G. by pinning him to a chair with her body weight.

64.     The force was objectively unreasonable in light of U.C.G.'s age, size, disability, and the lack of imminent threat.

65.     As a direct and proximate result, U.C.G. suffered physical pain, bruising, emotional distress, and educational regression.

66.     Ms. Guzman was required to hire an attorney to represent herself and her son in this matter, and is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

67.     Plaintiffs' remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm, as further elaborated in the Prayer for Relief.

**CLAIM 2:    Fourth and Fourteenth Amendments (42 U.S.C. § 1983)**
**            *Monell* Liability Against Defendant MSD**

68.     Plaintiffs incorporate by reference the above paragraphs.

### A. Plaintiff U.C.G. (by Guardian)

69.     Defendant Holt, an administrator representing MSD, "set the tone" for her staff with her abusive, bullying, and intimidating speech and actions toward both U.C.G. and his parent, Ms. Guzman.

70.     On information and belief, Defendant Mackay acted with impunity as she bullied and intimidated U.C.G. to the point he feared school, exhibited significant anxiety and stress, such that he was increasingly unable to maintain his behavior or emotions while at school. Mackay's bullying finally resulted in an assault by her against U.C.G., a five-year-old boy.

71.     Defendant Mackay is a full grown woman who brought the weight of her body to bear on a frightened five year old boy with autism while she pinned him to his school chair, causing him physical, mental, and emotional anguish. Such behavior is arbitrary and egregious given the size and power differential between the two.

72.     Defendant MSD's custom or pattern of tolerating abusive, assaultive, bullying, intimidating, and intolerant actions and beliefs by its staff plausibly perpetuated a presumed

tolerance of unconstitutional actions against persons on the basis of their race, ethnicity, language of origin, or disability by MSD staff and in the continuing tolerance of such behavior, MSD facilitates and a pattern of unconstitutional behaviors.

73.    These acts and omissions demonstrated deliberate indifference and caused U.C.G.'s constitutional injuries.

74.    As a direct and proximate result, U.C.G. suffered physical pain, bruising, emotional distress, and educational regression.

75.    Ms. Guzman was required to hire an attorney to represent herself and her son in this matter, and is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

76.    Plaintiffs' remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm, as further elaborated in the Prayer for Relief.

### B. Plaintiff Maria Bertha Guzman (Individually)

77.    MSD maintained policies, customs, or practices that were the moving force behind constitutional violations, including:

a. Failing to train and supervise staff in safe restraint;

b. Permitting untrained aides such as Mackay to work with disabled children;

c. Tolerating discriminatory conduct by administrators such as Holt;

d. Failing to notify parents after founded abuse reports; and

e. Failing to provide competent language interpretation.

78.    Ms. Guzman was subjected to multiple meetings with Defendant Holt in which Ms. Guzman was bullied, intimidated, mocked, silenced, and/or subjected to a translator who failed

to mitigate the language issue. As a direct and proximate cause of Defendant MSD's deliberate indifference to custom and practice, Plaintiff suffered an unconstitutional deprivation of her rights

79.     MSD, by and through Defendant Holt, so deprived Plaintiffs of their constitutional and statutory rights as a matter of official municipal policy, misapplication of policy and/or custom so pervasive and widespread as to practically have the force of law."

80.     MSD's policies, customs, and omissions foreseeably caused Ms. Guzman to be excluded from her son's education, denied language access, and subjected to discriminatory treatment, depriving her of constitutional rights.

81.     As a direct and proximate result, Ms. Guzman's rights were violated.

82.     Defendants Mackay's act and omissions alleged in this complaint while U.C.G. was a student at MSD resulted in violations of U.C.G.'s liberty and property interests.

83.     As a direct and proximate result of the actions and omissions described in this complaint, U.C.G. sustained the actual damages alleged supra.

84.     Ms. Guzman was required to hire an attorney to represent herself and her son in this matter, and is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

85.     Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm, as further elaborated in the Prayer for Relief.

**CLAIM 3:     Fourteenth Amendment and Violation of Constitutional Right to Equal
Protection on the Basis of Race (42 U.S.C. §§ 1981 and 1983)
Against Defendant MSD**

86.     Plaintiffs incorporate by reference the above paragraphs.

19 - COMPLAINT

87.     As Hispanic persons, plaintiffs are members of a protected class.

**A. Plaintiff U.C.G. (by Guardian)**

88.     Defendant MSD, acting under color of state law, intentionally treated U.C.G. differently from other similarly situated non-Hispanic students by subjecting him to discriminatory treatment in IEP meetings, labeling him a "criminal," excluding his mother from participation, and subjecting him to improper restraint.  Recall that U.C.G. was a Spanish-speaking five year old child experiencing Autism Spectrum Disorder in a classroom without a dedicated Spanish speaker.

89.     As a direct and proximate result of the actions and omissions described in this complaint, U.C.G. sustained the actual damages alleged supra.

90.     U.C.G. was required to hire an attorney (via Ms. Guzman) to represent him in this matter, and he is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

91.     U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**B. Plaintiff Maria Bertha Guzman (Individually)**

92.     Defendant MSD further violated the Equal Protection Clause when it failed to notify Ms. Guzman of Mackay's assault, even though (1) a Child Protective Services investigation had been opened and (2) Mackay was placed on leave shortly after the incident. Such differential treatment was based on U.C.G.'s disability and limited English proficiency, and bore no rational relation to any legitimate educational purpose. Ms. Guzman first learned that her son had been

assaulted by Mackay when she received the CPS report in March 2024 (more than three months

after the incident) establishing that allegations of Mackay's assault had been *founded.*

93.     On information and belief, the white, English-speaking parents of children enrolled in

MSD are not subjected to similar treatment.

94.     Accordingly, Defendant MSD violated the Equal Protection Clause of the Fourteenth

Amendment.

95.     Defendants Mackay's act and omissions alleged in this complaint while U.C.G. was a

student at MSD resulted in violations of U.C.G.'s liberty and property interests.

96.     As a direct and proximate result of the actions and omissions described in this complaint,

Ms. Guzman sustained the actual damages alleged supra.

97.     Plaintiff was required to hire an attorney to represent herself and her son in this matter,

and is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

98.     Plaintiffs' remedy at law is inadequate, and injunctive relief is necessary to protect him

and similarly situated students from future harm.


**CLAIM 4:     Fourteenth Amendment and Violation of Constitutional Right to Equal
Protection on the Basis of Race (42 U.S.C. §§ 1981 and 1983)
Against Defendant1s Holt and Mackay**

99.     Plaintiffs incorporate by reference the above paragraphs.

100.    As Hispanic persons, plaintiffs are members of a protected class.

101.    Defendants, acting under color of law, intentionally treated plaintiff differently from

similarly situated white people.

102.    Through the acts and omissions described herein, defendants deprived plaintiffs of the equal protection of the law within the meaning of the Fourteenth Amendment to the United States Constitution.

103.    Those acts and omissions violated plaintiff's Fourteenth Amendment rights and 42 U.S.C. §§ 1981 and 1983.

104.    Defendants Holt and Mackay violated rights held by plaintiffs which were clearly established, and no reasonable official similarly situated to defendants could have believed that his conduct was lawful or within the bounds of reasonable discretion. Defendants Holt and Mackay thus lack qualified immunity from suit or liability

105.    As a direct and proximate result of defendants' acts and omissions, plaintiffs sustained actual damages, including detention, pain, and humiliation, all to his damage in an amount to be ascertained according to proof at trial.

106.    The actions of defendants, as described in this complaint, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon plaintiffs.  As a result of said intentional conduct, plaintiffs are entitled to punitive damages against Defendant Holt and Defendant Mackay, in an amount sufficient to punish him and to deter others from like conduct.

107.    As a direct and proximate result of the actions and omissions described in this complaint, Plaintiffs sustained the actual damages alleged *supra*.

108.    Ms. Guzman was required to hire an attorney to represent herself and her son in this matter and she is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

109.    Plaintiffs' remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm, as further elaborated in the Prayer for Relief.

**CLAIM 5:    Fourteenth Amendment – Violation of Constitutional Right to Equal Protection on the Basis of Disability (42 U.S.C. § 1983) Against Defendant MSD**

110.    Plaintiffs incorporate by reference the above paragraphs.

**A. Plaintiff U.C.G. (by Guardian)**

111.    Defendants MSD knew or should have known that Defendant Mackay did not have the training required to safely restrain a child and that her untrained actions to restrain U.C.G. might cause harm to U.C.G..

112.    Holt mocked and labeled U.C.G. "a criminal" on the basis of his disability, communication challenges, and language barrier, treating him differently from similarly situated students without disabilities.

113.    This discriminatory treatment caused stigmatic injury and denial of equal educational access.

**CLAIM 6:    Fourteenth Amendment – Violation of Constitutional Right to Equal Protection on the Basis of Disability (42 U.S.C. § 1983) Against Defendants Holt and Mackay**

114.    Plaintiffs incorporate by reference the above paragraphs.

**A. Plaintiff U.C.G. (by Guardian)**

115.    Defendants Holt and Mackay knew or should have known that U.C.G.'s disabilities .

116.    Holt mocked and labeled U.C.G. "a criminal" on the basis of his disability, communication challenges, and language barrier, treating him differently from similarly situated

students without disabilities. Holt and Mackay treated U.C.G. with hostility, to the extent that the child was afraid to attend school.

117. This discriminatory treatment caused stigmatic injury and denial of equal educational access.

**CLAIM 7:    Fourteenth Amendment – Substantive Due Process (42 U.S.C. § 1983)
Against Defendant Mackay**

118. Plaintiffs incorporate by reference the above paragraphs.

**A. Plaintiff U.C.G. (by Guardian)**

119. Defendants Mackay knew or should have known that she did not have the training required to safely restrain a child and that her untrained actions to restrain U.C.G. might cause harm to U.C.G..

120. Mackay's conduct was egregious, arbitrary, and conscience-shocking, violating substantive due process rights to bodily integrity and personal security.

121. Mackay acted with deliberate indifference to the health and safety of a vulnerable disabled child despite her lack of training.

122. Defendants Mackay's act and omissions alleged in this complaint while U.C.G. was a student at MSD resulted in violations of U.C.G.'s liberty and property interests.

123. As a direct and proximate result of the actions and omissions described in this complaint, U.C.G. sustained the actual damages alleged supra.

124. U.C.G. was required to hire an attorney (via Ms. Guzman) to represent him in this matter, and he is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988. .

125.    U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

126.    As a direct result, U.C.G. suffered physical injury, trauma, emotional harm, distress, anxiety, and fear.

### B. Plaintiff Maria Bertha Guzman (Individually)

127.    Ms. Guzman suffered fear, distress, anxiety, and embarrassment by the school's frequent communications with her, alleging that her child was a problem child or a criminal. Ms. Guzman was extremely concerned and fearful regarding her child's increasingly severe behaviors at school, and the frequency with which the school called her, or requested her to pick the child up early.

128.    Ms. Guzman suffered extreme emotional distress, anger, and fear for her child upon learning her child had been assaulted by an MSD staff member while he was under the supervision of MSD.

### CLAIM 8:    Fourteenth Amendment – Substantive Due Process (42 U.S.C. § 1983) Against Defendant Holt

129.    Plaintiffs incorporate by reference the above paragraphs.

### A. Plaintiff U.C.G. (by Guardian)

130.    Holt's actions in calling a six-year-old autistic child "a criminal" were conscience-shocking, demonstrating deliberate indifference to his dignity and safety.

131.    As a result, U.C.G. suffered emotional harm and stigmatization.

**B. Plaintiff Maria Bertha Guzman (Individually)**

132.    Holt's conduct toward Ms. Guzman during the IEP meeting was conscience-shocking, depriving her of her right to participate in her son's education with dignity.

133.    As a result, she suffered fear, anger, humiliation and emotional distress.

**CLAIM 9:    Fourteenth Amendment – Procedural Due Process (42 U.S.C. § 1983)
                Against Defendant MSD and Holt**

134.    Plaintiffs incorporate by reference the above paragraphs.

**A. Plaintiff U.C.G. (by Guardian)**

135.    MSD's failure to notify U.C.G.'s parents of DHS's founded abuse report deprived him of parental protection and potentially exposed U.C.G. to continued exposure to the abusive staff member.

136.    MSD's failure to notify U.C.G.'s parents of the abuse meant that Ms. Guzman did not learn about it until three months later when she received the notice from DHS. Three months is an extremely long time in the life of a five year old child. Because U.C.G. is limitedly verbal, he was unable to tell his mother the source of his fear and distress related to the school building. Had MSD or Holt informed Mrs.

**B. Plaintiff Maria Bertha Guzman (Individually)**

137.    Ms. Guzman has a liberty interest in the care and custody of her child.

138.    MSD deprived her of that interest by failing to notify her of DHS's founded abuse report, thereby denying her the opportunity to protect U.C.G. from further harm.

**CLAIM 10:   Violation of Constitutional Right to Substantive Due Process 42 U.S.C. §
1983 –Deliberate Indifference Individually
Against Defendants MSD, Felica Holt, and Phyllis Mackay**

**COUNT 10.1   Deliberate Indifference to Health and Safety –
Against Defendant MSD**

139.   Plaintiffs incorporate by reference the above paragraphs.

140.   Defendant MSD had actual knowledge or reason to know that (1) Mackay was untrained
in safe holds and restraints; (2) Mackay was assigned to work in a classroom that was specific to
students with disabilities commonly experiencing behaviors that require safe holds and
restraints; (3) Mackay was one-on-one in the classroom with U.C.G. at the time of the incident,
with no other adults in the room; and (4) Mackay had reacted to U.C.G.'s behavior with
excessive force on at least one occasion.

141.   Further, Defendant MSD was deliberately indifferent to the excessive force used by
Mackay against U.C.G. and failed to institute measures to prevent untrained staff from using
excessive force against U.C.G.. By failing to mitigate the staff's lack of training, Defendant
MSD permitted the hostile environment that directly led to Mackay's unsafe and assaultive
actions against U.C.G.. Defendant MSD acted with deliberate indifference when they failed to
take steps to mitigate the health and safety threats within the walls of U.C.G.'s classroom,
including failure to supervise Defendant Mackay, failure to assign a second adult to the special
education classroom, and failure to provide training to Phyllis Mackay in safe holds and
restraints.

142.   The actions and omissions of the individual Defendants as described above are official
practices, customs, and/or policies of the Defendant District, based upon one or both of the
following theories:

143.    The Defendants' actions taken, and decisions not to take certain actions, in response to the individual Defendants' conduct regarding U.C.G., constitute adoption of official practices, customs, and/or policies;

144.    The Defendants knew or should have known about the practices described in this complaint, as these practices are so well settled as to constitute a custom or usage in the District, but the Defendant MSD failed to take affirmative actions to prevent the actions alleged in this complaint.

145.    Defendant MSD failed to supervise Phyllis Mackay in her management of student behavior in the classroom.

146.    Defendant MSD failed to provide training to Phyllis Mackay in the appropriate use of safe holds or the appropriate implementation of U.C.G.'s individualized education plan.

147.    Defendant MSD failed to provide an additional adult in the special education classroom to maintain the operation of the classroom, so that if a student's behavior warranted a safe hold or a restraint, the safe hold or restraint could be adequately and safely performed by a trained staff member, while the other students were still under adult supervision.

148.    The District's actions, omissions, policies, customs, and/or practices alleged herein amount to deliberate indifference to the Plaintiff's constitutional rights.

149.    The District's policy and/or practice was the moving force behind the constitutional violations alleged herein.

150.    The Defendants' acts and omissions alleged in this complaint resulted in violations of U.C.G.'s liberty and property interests.

151.    To this day, U.C.G. experiences fear and anxiety related to Mackay, as well as safe holds and restraints performed at school. This is despite MSD changing the school placement of U.C.G., and lessening his proximity to Mackay to zero.

152.    As a direct and proximate result of the actions and omissions described in this complaint, Plaintiff sustained the actual damages alleged supra.

153.    Defendant MSD's omissions, policies, customs, and/or practices alleged herein amount to deliberate indifference to U.C.G.'s constitutional rights.

154.    The District's policy and/or practice was the moving force behind the constitutional violations alleged herein.

155.    Plaintiff was required to hire an attorney (via Ms. Guzman) to represent him in this matter, and he is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

156.    Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**COUNT 10.2     Deliberate Indifference to Health and Safety
                Against Defendants Holt and Mackay**

157.    Plaintiffs incorporate by reference the above paragraphs.

158.    Defendant Mackay had actual knowledge or reason to know that her methods of restraining students were unsafe, and that she had reacted with deliberate indifference to U.C.G. and that her daily interactions with U.C.G. caused him to experience fear and anxiety at school.

159.    The actions and omissions of Defendant Mackay as described above are official practices, customs, and/or policies.

160.    Defendant Mackay failed to receive training in the appropriate use of safe holds or the appropriate implementation of U.C.G.'s individualized education plan.

161.    Defendant Mackay failed to require MSD to provide an additional adult in the special education classroom to ensure that she could focus on safely assisting student's with their education, and to ensure that an adult was present who was trained to safely perform safe holds and restraints and could do so on students experiencing harmful behaviors.

162.    Defendant Mackay's inactions amount to deliberate indifference to the stress and anxiety and mental well-being of U.C.G. and deliberate indifference to U.C.G.'s constitutional rights.

163.    Defendant Mackay's acts and omissions alleged in this complaint resulted in violations of U.C.G.'s liberty and property interests.

164.    To this day, U.C.G. experiences fear and anxiety related to Mackay. This is despite MSD changing the school placement of U.C.G., and lessening his reducing his proximity to Mackay to zero.

165.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

166.    Plaintiff was required to hire an attorney (via Ms. Guzman) to represent him in this matter, and he is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

167.    U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**CLAIM 11:    Section 504 of the Rehabilitation Act (29 U.S.C. § 794)
                      Against Defendant MSD**

168.    Paragraphs [1–53] are incorporated herein by reference.

**A. Plaintiff U.C.G. (by Guardian) –
Discrimination on the Basis of Disability.**

169.    Plaintiffs incorporate by reference the above paragraphs.

170.    MSD denied U.C.G. meaningful access to educational benefits by permitting unlawful restraint and discriminatory treatment.

~~171.~~    Defendant MSD discriminated against U.C.G. on the basis of disability by denying him meaningful access to educational services. At IEP meetings, district staff called him a "criminal," demeaned his parents, and failed to provide adequate interpretation in Spanish.

172.    Staff attitudes toward U.C.G. were not restricted to unprofessional behavior in meetings with the parents; Mackay and other staff failed to help U.C.G. manage his behaviors, failed to accommodate his sensory needs, and failed to treat him like a respected and valuable school member. U.C.G. reacted to staff harshness; his behavioral challenges increased. U.C.G. did not exhibit similar behavioral challenges at home, and his school-based behavioral challenges were dramatically reduced shortly after U.C.G. changed schools and teachers.

173.    Staff belief that U.C.G. was a criminal was obvious to him, caused him fear and anxiety, resulting in decreased ability to focus on his lessons. Frequent school removals further reduced U.C.G.'s access to education discriminated against U.C.G. on the basis of his disability.

174.    MSD failed to ensure that U.C.G. could participate in his education on equal terms with nondisabled peers. These actions deprived U.C.G. of equal access to educational opportunities and services as required by Section 504.

175.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

176.    U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**B. Plaintiff U.C.G. (by Guardian) –**
   **Discrimination on the Basis of Language.**

177.    Plaintiffs incorporate by reference the above paragraphs.

178.    Defendant MSD discriminated against U.C.G. on the basis of language by denying him meaningful access to educational services in Spanish, his primary language.

179.    MSD further violated Section 504 by failing to provide effective communication to Ms. Guzman, a limited-English-proficient parent.

180.    At U.C.G.'s IEP meetings, MSD staff demeaned his parents, failed to permit Ms. Guzman to participate fully, and provided a school interpreter whose language skills were grossly inadequate. Despite the presence of a Spanish-speaking family advocate and Spanish-speaking note-taker, the school-provided interpreter repeatedly mistranslated or failed to accurately translate communications. The advocate, who has supported families for thirty years, stated she had "never seen such an inappropriate language skill in an interpreter."

181.    By failing to provide competent interpretation, MSD denied Ms. Guzman meaningful participation in her son's education and denied U.C.G. the benefits of his special-education program on equal terms with his peers. MSD's actions violated Section 504 by discriminating against U.C.G. on the basis of both disability and national origin/language.

182.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

183.    U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**C. Plaintiff Maria Bertha Guzman (Individually) –
   Discrimination on the Basis of Language.**

184.    MSD further violated Section 504 by failing to provide effective communication to Ms. Guzman, a limited-English-proficient parent.

185.    At U.C.G.'s IEP meetings, MSD staff, including Defendant Holt,  demeaned Ms. Guzman because of her limited English proficiency, failed to permit Ms. Guzman to participate fully, and provided a school interpreter whose language translation was ethically whose language translation was insufficient and ethically inadequate. Despite the presence of a Spanish-speaking family advocate and Spanish-speaking note-taker, the school-provided interpreter repeatedly mistranslated or failed to interpret communications. The advocate, who has supported families for thirty years, stated she had "never seen such an inappropriate language skill in an interpreter."

186.    On many occasions, Ms. Guzman's questions were interrupted, MSD staff reacted with exasperation at Ms. Guzman's questions, and Defendant Holt even interrupted a question to state, with disdain, "You don't understand."  Ms. Guzman felt intimidated into silence.

187.    By failing to provide competent Spanish Language interpretation, MSD denied Ms. Guzman effective communication to facilitate meaningful participation in her son's education.

MSD's actions violated Section 504 by discriminating against U.C.G. on the basis of both disability and national origin/language.

188.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

189.    Ms. Guzman was required to hire an attorney to represent herself and her son in this matter and she is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

190.    Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**CLAIM 12:    Title II of the Americans with Disabilities Act (29 U.S.C. § 12132) Against Defendant MSD**

191.    Plaintiffs incorporate by reference the above paragraphs.

192.

193.    Defendant MSD is a public entity subject to Title II of the ADA. MSD subjected U.C.G. to discrimination by reason of his disability when it allowed an untrained educational assistant to physically restrain him, leaving bruises and marks, and when it failed to provide reasonable accommodations in IEP proceedings and other communications with MSD, including language access for his mother. Such actions denied U.C.G. the benefits of public education programs and services, in violation of Title II.

**A.  Plaintiff U.C.G. (by Guardian)**

194.    MSD, a public entity, discriminated against U.C.G. by reason of his disability by:

a. Allowing untrained staff to restrain him unlawfully;

b. Failing to provide accommodations to prevent abuse and stigma; and

c. Denying him access to effective communication during the school day by failing to provide a Spanish-speaking aide or teacher.

d. Excluding him from equal educational opportunity.

195.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

196.    U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**CLAIM 13:    Title VI of the Civil Rights Act (42 U.S.C. § 2000d)**
                **National Origin/Language Discrimination**
                **Against Defendant MSD**

197.    Plaintiffs incorporate by reference the above paragraphs.

198.    Defendant MSD is a recipient of federal financial assistance and is subject to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. Title VI prohibits discrimination on the basis of race, color, or national origin, including discrimination that arises from language barriers.

199.    MSD provided a Spanish-language interpreter who lacked sufficient translator competence to accurately convey communications between the District and U.C.G.'s parents. depriving Ms. Guzman of effective communication with her son's school and staff, including communications during the IEP process.

**A.  Plaintiff U.C.G. (by Guardian)**

200.     MSD, a public entity, discriminated against U.C.G. by reason of his disability by:

a. Allowing untrained staff to restrain him unlawfully;

b. Failing to provide accommodations to prevent abuse and stigma; and

c. Denying him access to effective communication during the school day by failing to provide a Spanish-speaking aide or teacher.

d. Excluding him from equal educational opportunity.

201.   As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

202.   U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

203.   By failing to provide competent interpretation, MSD denied Ms. Guzman, a limited-English-proficient parent, equal access to District services and deprived U.C.G. and his family of meaningful participation in the educational process. These failures amount to discrimination on the basis of national origin in violation of Title VI.

204.   As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

205.   Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**A. Plaintiff U.C.G. (by Guardian)**

206.   MSD's failure to provide competent interpretation deprived U.C.G. of parental advocacy and meaningful access to federally funded school services.

207.   Furthermore, U.C.G. (a young child with autism, limited communication skills, for whom Spanish is his primary language) was placed a classroom at Wilson Elementary that lacked a

Spanish speaking adult. U.C.G. was unable to participate meaningfully in his education under those circumstances.

208.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G. sustained the actual damages described herein.

209.    U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**B. Plaintiff Maria Bertha Guzman (Individually)**

210.    MSD discriminated against Ms. Guzman on the basis of national origin by providing an incompetent interpreter, thereby denying her equal access to school services and participation in IEP proceedings**.**

211.    Very recently, Defendant Holt attempted to have Ms. Martínez Razo, the family's support advocate, banned from advocating with the family in MSD meetings.

212.    As a direct and proximate result of the actions and omissions described in this complaint, Ms. Guzman sustained the actual damages described herein.

213.    Ms. Guzman was required to hire an attorney to represent herself and her son in this matter and she is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

214.    Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**CLAIM 14:    Negligence – Oregon Tort Claims Act – Duty of Supervision/Training Against Defendant MSD.**

215.    Plaintiffs incorporate by reference the above paragraphs.

216.    MSD owed U.C.G. a duty of care as his educators and breached that duty by failing to train, supervise, and protect him from foreseeable harm.

217.    Under the Oregon Tort Claims Act, Defendant MSD is liable for the state tort violations by Phyllis Mackay.

218.    It was reasonably foreseeable to Defendant MSD that U.C.G. would be subjected to the assault alleged in this complaint if they did not take steps to prevent such assaults from occurring.

219.    The employees of Defendant MSD were negligent or not reasonable or prudent in one or more of the following ways:

220.    Failing to provide proper supervision in the classroom in which U.C.G. was placed;

221.    Failing to implement measures reasonably designed to prevent such unsafe handling of children from occurring;

222.    Failing to properly instruct or train defendants agents or employees in preventing such assaults and mishandlings from occurring;

223.    Failing to train Phyllis Mackay in appropriate de-escalation or safe hold strategies for a child in behavioral distress;

224.    Failing to provide an additional adult in the classroom in which U.C.G. was placed despite knowing the obvious fact that the children in U.C.G.'s classroom were more inclined to have unsafe behaviors;

225.    Failing to stop a verbal attack while it was happening.

226.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G. sustained actual damages, including injuries to his person, pain, mental and emotional

suffering, worry, fear, anguish, shock, nervousness, anxiety, loss of time in school; and

regression in learned behavioral management skills; all to his damage in an amount to be

ascertained according to proof at trial. U.C.G. continues to experience fear and anxiety related to

restraint by adults at school and related to his memories of Mackay.

227.     Due to these acts, U.C.G. suffered the damages alleged herein.

228.     Under the Oregon Tort Claims Act, Defendant MSD is liable for the battery committed

by Phyllis Mackay. The tort claim notice described supra gave notice that Plaintiff would sue

defendants under state tort law for negligence for the actions and omissions alleged herein.

However, federal claims do not require a plaintiff to serve a tort claim notice on a defendant.

229.     Ms. Guzman was required to hire an attorney to represent herself and her son in this

matter and she is entitled to an award of reasonable attorneys' fees and costs pursuant to 42

U.S.C. § 1988.

230.     Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him

and similarly situated students from future harm.

**CLAIM 15:     Assault – Oregon Tort Claims Act –
                Against Defendants MSD and Mackay**

231.     Plaintiffs incorporate by reference the above paragraphs.

232.     Defendant Mackay committed assault against U.C.G. by intentionally placing him in fear

of imminent harmful contact when she forcefully restrained him by the wrists, using her body

weight to pin him to a chair. U.C.G., a small child with autism, cried and attempted to break free

during the restraint, demonstrating his fear and apprehension of further harmful contact.

39 - COMPLAINT

233.    Defendant MSD is vicariously liable for the assault committed by its employee Mackay under the Oregon Tort Claims Act.

234.    Defendant MSD is liable for its failure to train Mackay in applying safe holds with children with disabilities.

235.    As a direct and proximate result of the actions and omissions described in this complaint, Ms. Guzman  sustained the actual damages described herein.

236.    Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**CLAIM 16:    Battery – Oregon Tort Claims Act –**
**Against Defendants MSD and Mackay**

237.    Plaintiffs incorporate by reference the above paragraphs.

238.     Mackay committed battery. Under Oregon Law, Battery is a "voluntary act that is intended to cause the resulting harm or offensive contact." The tort of battery has three elements: (1) the defendant must commit a voluntary act, (2) the act must result in harmful or offensive acts, and (3) the defendant must have intended to cause the harmful or offensive act. *See Ballard v. City of Albany*, 221 Ore. App. 630, 191 P.3d 679, 680-81 (Or. Ct. App. 2008).

239.    Mackay voluntarily and intentionally committed acts that resulted in U.C.G.'s harm and offense;  including but not limited to Mackay pushing U.C.G. against his classroom chair, with Mackay's hands wrapped tightly around U.C.G.'s wrists, which were held down against U.C.G.'s classroom chair, with Mackay's body weight leaning into the improper restraint. Mackay continued to restrain U.C.G. in this painful and frightening position for over five minutes, despite U.C.G.'s cries and attempts to break free of Mackay's grip.

240.    This voluntary act committed by Mackay resulted in the harmful and offensive act of physically and emotionally harming U.C.G.. This act was intended by Mackay as both the level of force and time period that force was used was unnecessarily too long and too great. Any amount of time that an adult person applies kneeling force on a 40-pound child is unnecessarily too long and too great.

241.    Had Mackay only wanted to restrain the student without causing harm or offense, she could have done so by utilizing safe holds. However, Mackay voluntarily used unnecessary force for an extended period of time.

242.    Makay was not trained to utilize a safe hold.

243.    Accordingly, Mackay committed battery against U.C.G..

244.    Furthermore, Defendant Mackay's restraint was contrary to MSD Board Policy JGAB, which probits "[a]ny restraint that involves the intentional and nonincidental use of a solid object1 , including a wall or the floor, to impede a student's movement, unless the restraint is necessary to prevent an imminent life-threatening injury or to gain control of a weapon."

245.    Pinning a five year old child to a classroom chair is a clear violation of MSD Board Policy JGAB.

246.    U.C.G. continues to experience fear and anxiety related to restraint by adults at school and related to his memories of Mackay.

247.    As a direct and proximate result of the events occurring in U.C.G.'s classroom, U.C.G. sustained actual damages, including injuries to his person, pain, mental and emotional suffering, worry, fear, anguish, shock, nervousness, anxiety, loss of time in school; and regression in learned behavioral management skills; all to his damage in an amount to be ascertained

according to proof at trial. U.C.G. continues to experience fear and anxiety related to restraint by adults at school and related to his memories of Mackay.

248.    Under the Oregon Tort Claims Act, Defendant MSD is liable for the battery committed by Mackay.

249.    Due to these acts, Plaintiff suffered the damages alleged herein.

**CLAIM 17:    Abuse of a Vulnerable Person**
**                  Against Defendants MSD and Mackay**

250.    Plaintiffs incorporate by reference the above paragraphs.

251.    U.C.G. is a vulnerable person as defined by ORS 124.100(1)(g)(D) because he is a child with a disability

252.    At common law, the torts of assault and battery consist of the following elements: (1) an actor acts intending to cause a harmful or offensive touching with the person of another or a third person, or an imminent apprehension of such contact; and (2) a harmful or offensive contact with the person of the other directly or indirectly results (battery) or the other person is thereby put in such imminent apprehension (assault). *Foster v. Miramontes*, 236 Or. App. 381, 388, 236 P.3d 782 (2010), rev'd in part on other grounds, 352 Or. 401, 287 P.3d 1045 (2012).

253.    As described above, Defendant Mackay committed assault and battery against U.C.G..

254.    Defendant MSD is vicariously liable for Mackay's abuse of a vulnerable person.

255.    Due to those acts, U.C.G. suffered the actual damages alleged above, and is entitled to an amount equal to three times all economic and noneconomic damages, and reasonable attorney fees. ORS 124.100(2)(a – c) .

256.    U.C.G.'s remedy at law is inadequate, and injunctive relief is necessary to protect him

and similarly situated students from future harm, as further elaborated in the Prayer for Relief.

**CLAIM 18:    Intentional Infliction of Emotional Distress – Oregon Tort Claims Act
                Against Defendant Mackay**

257.    Plaintiffs incorporate by reference the above paragraphs.

258.     Mackay committed the tort of Intentional Infliction of Emotional Distress. To prove a

claim of intentional infliction of emotional distress under Oregon law, a plaintiff must establish:

(1) the defendant intended to inflict severe emotional distress, (2) the acts were the cause of

plaintiff's severe emotional distress, and (3) the acts were sufficiently grievous to constitute a

transgression of the bounds of socially tolerable conduct. *See Delaney v. Clifton,* 180 Ore. App.

119, 129-30 (Or. App. 2002). Additionally, "the intent element of the claim does not require a

malicious motive or a purposeful design to inflict emotional distress on the plaintiff; it is

satisfied if a defendant either desires to inflict severe emotional distress, or knows that such

distress is certain, or substantially certain, to result from his conduct." *Id*. at 132. Furthermore,

determination of whether the conduct is sufficiently outrageous is to be determined on a "case by

case basis by considering the totality of the circumstances." *Id*. at 130.

259.    On at least one occasion, Mackay, by the force of her adult body weight, held U.C.G.

down on a classroom chair, by his wrists, leaving bruises and markings, for an extended duration

of time, despite U.C.G.'s cries and attempts to break free of Mackay's grip. Mackay was

substantially certain while preforming these actions the distress she was causing would result in

U.C.G.'s severe emotional distress, which they did as demonstrated by U.C.G.'s severe adverse

reactions to attending school, after the November 2023 incident.

43 - COMPLAINT

260.   U.C.G. demonstrated "severe adverse reactions" after the November 2023 incident, when he would display outbursts of tears, anxiety, and panic at home when it was time for him to travel to school at Wilson Elementary.

261.   This incident shows that U.C.G. experienced severe emotional distress to the point where U.C.G. can no longer engage in regular and consistent school attendance at Wilson Elementary, without reliving the traumatic experience.

262.   Finally, the last standard is the act must be sufficiently grievous to constitute a transgression of the bounds of socially tolerable conduct, and this standard is considered on a case by case basis. *See Delaney v. Clifton,* 180 Ore. App. 119, 129-30 (Or. App. 2002). The general assumption by the community is physical restraint or violence should never be used on children unless absolutely necessary, and then only to the extent required. Here, Mackay did not need to firmly grab U.C.G. by the wrists, utilizing Mackay's adult body weight, in order to restrain U.C.G. and certainly did not need to continue to do so for an extended period of time with the amount of force necessary to restrict movement of U.C.G.'s arms and body.

263.    U.C.G. continues to experience fear and anxiety related to restraint by adults at school and related to his memories of Mackay.

264.   As a direct and proximate result of the actions and omissions described in this complaint, U.C.G. sustained actual damages, including injuries to his person, pain, mental and emotional suffering, worry, fear, anguish, shock, nervousness, anxiety, loss of time in school; and regression in learned behavioral management skills.

265.   Accordingly Mackay committed the tort of intentional infliction of emotional distress upon U.C.G..

266.    Under the Oregon Tort Claims Act, Defendant MSD is vicariously liable for those acts.

267.    Due to those acts, Plaintiff suffered the damages alleged *supra*.

268.    As a direct and proximate result of the actions and omissions described in this complaint, U.C.G.  sustained the actual damages described herein.

269.    Ms. Guzman was required to hire an attorney to represent herself and her son in this matter and she is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

270.    Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**CLAIM 19:    In the alternative, Negligent Infliction of Emotional Distress**
**Against All Defendants**

271.    Plaintiffs incorporate by reference the above paragraphs.

**A. Plaintiff U.C.G. (by Guardian)**

272.    MSD owed U.C.G. is in a special relationship with U.C.G.; MSD owed a duty of care as his educators and breached that duty by failing to train and supervise staff members and failed to protect him from foreseeable harm.

273.    MSD is required by law to notify parents when their child is restrained by staff. MSD failed to notify Ms. Guzman that U.C.G. had been restrained by Defendant Mackay and that Mackay's actions had been referred to DHS. ORS 339.294.

274.    MSD's failure to notify U.C.G.'s parents of DHS's founded abuse report deprived U.C.G. of parental protection and continued exposure to the abusive staff member.

275.    As a result, U.C.G. has suffered fear, anxiety, and stress; U.C.G. was distraught for several weeks following the unlawful restraint.

276.    Ms. Guzman was required to hire an attorney to represent herself and her son in this matter and she is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

277.    Plaintiff's remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

**CLAIM 20:    Violation of Oregon Educational Statutes (ORS 343.155, ORS 343.221)**

278.    Plaintiffs incorporate by reference the above paragraphs.

279.    Oregon statutes guarantee parental participation in educational decision-making, including IEP meetings, and require school districts to provide appropriate notice and access to translation. Defendant MSD violated ORS 343.155 and ORS 343.221 when it excluded Ms. Guzman from her son's IEP meeting without notice or opportunity to reschedule, failed to provide communication in Spanish, and failed to ensure meaningful parental participation.

280.    These violations caused further harm to U.C.G. and his family by denying statutory rights to participation and access.

281.    As a direct and proximate result of the actions and omissions described in this complaint, Plaintiffs sustained the actual damages described herein.

282.    Ms. Guzman was required to hire an attorney to represent herself and her son in this matter and she is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

283.    Plaintiffs' remedy at law is inadequate, and injunctive relief is necessary to protect him and similarly situated students from future harm.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, U.C.G., by and through his guardian Ms. Guzman, prays for the following relief:

A.  Compensatory damages in an amount to be proven at trial;

B.  Punitive damages against Defendants Mackay and Holt;

C.  Declaratory relief that Defendants' conduct violated Plaintiffs' constitutional and statutory rights;

D.  Injunctive relief requiring the District to adopt and implement lawful policies and training to prevent recurrence of the violations alleged herein;

E.  Plaintiffs' reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law; and

F.  Such other and further relief as the Court deems just and proper.

Dated this 12th day of September, 2025.

*/s/ Kimberly Sherman*
Kimberly Sherman, OSB 174646 (she/her)
kim.sherman@e3-law.com

*/s/ Emily Artzberger*
Emily Artzberger, OSB 253656 (she/her)
emily@e3-law.com

Education, Environmental, & Estate Law
P.O. Box 728
Eugene, Oregon, 97440
(360) 503-0334
  Attorneys for Plaintiff

47 - COMPLAINT